**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CASE NO.______________________**

PROGRESSIVE EXPRESS INSURANCE COMPANY, AN OHIO CORPORATION,

Plaintiff,

v.

UBER TECHNOLOGIES, INC., a Foreign Profit Corporation; SUZANNE DENISE FECTEAU, and TRISTAN LANCE KEPPLE,

Defendants.

---

**COMPLAINT FOR DECLARATORY JUDGMENT**

---

PROGRESSIVE EXPRESS INSURANCE COMPANY, an Ohio corporation ("PROGRESSIVE"), by and through its undersigned attorney, files this Complaint for Declaratory Judgment against Defendants, UBER TECHNOLOGIES, INC., a Foreign Profit Corporation ("UBER"); SUZANNE DENISE FECTEAU ("FECTEAU"); and TRISTAN LANCE KEPPLE ("KEPPLE"), and states:

1. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201.

**PARTIES, JURISDICTION AND VENUE**

2. At all times material hereto, PROGRESSIVE was a corporation organized and existing under the laws of the State of Ohio, with its principal place of

business in the State of Ohio. As such, PROGRESSIVE is a citizen of the State of Ohio.

3. At all times material hereto, UBER was a foreign profit corporation organized under the laws of the State of Delaware with its principal place of business in the State of California and conducting business within the State of Florida. Because it is incorporated in Delaware, and holds its principal place of business in California, UBER is a citizen of both the State of California and the State of Delaware.

4. At all times material hereto, FECTEAU was a resident and citizen of Volusia County, Florida.

5. At all times material hereto, KEPPLE was a resident and citizen of Volusia County, Florida.

6. This court has subject matter over the instant action pursuant to 28 U.S.C. § 1332(a)(1), because diversity of citizenship exists as between Progressive, on the one hand, and Defendants, on the other, and the amount in controversy exceeds $75,000.00.[1]

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391, because the underlying accident giving rise to this dispute occurred in this district, two of the Defendants reside in this district, and all remaining Defendants conduct business

[1] As a result of this accident, Fecteau is claiming serious personal injury including fractured patella, central cord syndrome of level C4 of cervical spine, a spinal fusion surgery, over $45,715 in past medical bills, and continuing medical treatment. The totality of the damages and claims for the underlying litigation exceed the $75,000.00 jurisdictional requirement of this Court. The Plaintiff is seeking a declaratory action to determine whether or not a $1,000,000 or $50,000.00 policy applies to this loss, thus again meeting the amount in controversy over $75,000.00.

within this District.

**THE PROGRESSIVE POLICIES**

8. PROGRESSIVE issued to UBER, as an additional insured, two separate Transportation Network Company Commercial Auto Policies.

9. The first policy, under Policy No. 06250133, was issued for the policy period from March 1, 2021 through September 1, 2021 ("the Period I TNC Policy") and was intended to provide insurance to TNC drivers who are not engaged in a **prearranged service** at the time of an accident.

10. The Period I TNC Policy was comprised of contract form Z900 FL (08/20). A complete copy of the policy, including all endorsements, is attached hereto as Exhibit "A", and incorporated by reference herein.

11. The Period I TNC Policy provides $50,000 per person/$100,000 per accident in bodily injury coverage for losses that fall under the policy coverage. The policy states, in pertinent part:

**COMMERCIAL AUTO POLICY**

> If **you** pay **your** premium when due, **we** will provide the insurance described in this policy.
>
> **GENERAL DEFINITIONS**
>
> **The words and phrases below, whether in the singular, plural or possessive, have the following special meanings when appearing in boldface type in this policy, and in endorsements issued in connection with this policy, unless specifically modified.**
>
> 1. **"Accident"** means a sudden, unexpected and unintended event, or a continuous or repeated exposure to that event, that causes **bodily injury** or **property damage**.
> 2. **"Auto"** means a land motor vehicle:

a. of the private passenger, pickup body, or cargo van type;
b. designed for operation principally upon public roads;
c. with at least four wheels;
d. with a seating capacity of eight or fewer passengers, including the driver; and
e. with a gross vehicle weight rating of 10,000 pounds or less, according to the manufacturer's specifications.

However, **auto** does not include step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area.

3. "**Available to receive service requests"** means the operation of any **insured auto** while that driver is logged onto the **ride-share application** with **valid credentials** and is available to receive requests for **covered TNC operations,** but has not recorded acceptance of a request in the **ride-share application** and is not on a public airport premises.
4. **"Bodily injury"** means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.
5. "**Covered TNC operations"** means the provision of either passenger services or non-passenger delivery services by a natural person and specifically excludes taxi operations. Only **your transportation network company** services that are available in the **ride-share application** and previously disclosed to **us** by **you** in **your** application for insurance, or endorsement thereto, for use with **valid credentials** are considered "**covered TNC operations.**"
6. **"Declarations"** or **"declarations page"** means the document prepared by **us** listing **your** policy information, which may include the types of coverage **you** have elected, the limit for each coverage.
7. **"Goods"** means property, merchandise, food, documents, or any other tangible item. When the **"goods"** are food, **"goods"** includes service bags and containers needed to deliver the food, but only when the driver is in the course of delivering the food or returning the service bag or container to the restaurant or to its owner.
8. **"Insured auto"** means:
   a. Any **auto** while being used by a **TNC driver**, but only while **available to receive service requests** utilizing the **ride-share application** accessed using that **TNC driver's valid credentials;** or
   b. any **auto** while that **auto** is being operated by a person other than a **TNC driver** to whom **you** assigned the **valid credentials**, while being used with the **ride-share application** at the time of the **accident** or **loss** when all of the following apply:
      (i) the operator of the **auto** is **available to receive service requests;** and

(ii) and the **ride-share application** was accessed using **valid credentials**.

9. **"Loss"** means sudden, direct and accident loss or damage.

***

11. **"Occupying"** means in, on, entering, exiting, or alighting from.

***

13. **"Prearranged service"** means any of the following:
    a. The operation of any **insured auto** while the driver is logged on to the **ride share application** and has recorded acceptance in the **ride-share application** of a request to provide **covered TNC operations** and is engaged in one of the following activities:
       (i) Traveling to the accepted pick-up location of the passenger(s) or **goods** to be delivered, including the picking up of any passenger(s) or **goods,** and the pick-up location is in the state of Florida; or
       (ii) Traveling to the final destination location of the passenger(s) or **goods** including the dropping off of any passenger(s) or **goods,** and the pick-up location was in the state of Florida.
    b. the operation of any **insured auto** while the driver is logged on to the **ride-share application** and is available to perform **covered TNC operations,** but has not recorded acceptance of such request in the **ride-share application** and is on a public airport premises within the state of Florida; or
    c. the operation of any insured auto while on a public airport premises within the state of Florida immediately after dropping off any passenger(s) or goods as the result of completing a request for covered TNC operations using the ride-share application and the TNC driver or other operator of the insured auto has not recorded acceptance in the ride-share application of another request to provide covered TNC operations.

    "**Prearranged service"** does not include a shared expense carpool or vanpool or transportation provided by a taxicab.

***

15. **"Ride-share application"** means the digital network licensed and made available by **you** that is used by a **TNC driver** to receive requests to provide **covered TNC operations.**
16. **"TNC driver"** means an individual, who is not **your** employee, providing **covered TNC operations** via the **ride-share application.**
17. **"Transportation network company"** means an entity that uses an online-enabled application, software, website, or system to connect network company users with network company drivers for the purpose of facilitating the transportation of passengers and/or non-passenger delivery of **goods**.
18. **"Valid credentials"** means the unique password and other credentials provided by you and assigned to the **TNC** driver

pursuant to a contract between you and the **TNC** driver in order for that **TNC driver** to access the **ride-share application.**

19. "**We**", "**us**" and "**our**" mean the company providing this insurance as shown on the **declarations page**.
20. "**You**", "**you**r" and "**yours**" refer to the named insured shown on the **declarations page**.

**PART I - LIABILITY TO OTHERS**

**INSURING AGREEMENT- LIABILITY TO OTHERS**

Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury** and **property damage** for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of an **insured auto** while **available to receive service requests.**

* * *

**ADDITIONAL DEFINITIONS USED IN THIS PART ONLY**

When used in Part I - Liability To Others, **insured** means:

1. **You** with respect to an **insured auto**.
2. A **TNC driver** operating an **insured auto**.
3. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person or entity otherwise covered under this Part I – Liability to Others.

***

12. The second policy, under Policy No. 06250110, was issued for the policy period from March 1, 2021 through September 1, 2021 ("the Period II TNC Policy") and was intended to provide insurance to TNC drivers who were engaged in a **prearranged service** at the time of an accident.

13. The Period II TNC Policy was comprised of contract form Z901 FL (01/21). A complete copy of the policy is attached hereto as Exhibit "B" and is incorporated by reference herein.

14. The Period II TNC Policy utilized a majority of the same definitions as the Period I policy, but changed the definition of an "**insured auto"** and **"prearranged service"** to the following:

***

7. "**Insured auto**" means:
   a. Any **auto** while being used by a **TNC driver**, but only while engaged in providing a **prearranged service** utilizing the **ride-share application** accessed using that **TNC driver's valid credentials**; or
   b. Any **auto** while that **auto** is being operated by a person other than a **TNC driver** to whom **you** assigned the **valid credentials**, while being used with the **ride-share application** at the time of the **accident** or **loss**, when all of the following apply:
      (i) the operator of the **auto** is engaged in providing a **prearranged service**; and
      (ii) the **ride-share application** was accessed using **valid credentials**.

***

12. "**Prearranged service"** means any of the following:
   a. the operation of any **insured auto** while the driver is logged on to the **rideshare application** and has recorded acceptance in the **ride-share application** of a request to provide **covered TNC operations** and is engaged in one of the following activities:
      (i) traveling to the accepted pick-up location of the passenger(s) or **goods** to be delivered, including the picking up of any passenger(s) or **goods**, and the pick-up location is in the state of Florida; or
      (ii) traveling to the final destination location of the passenger(s) or **goods**, including the dropping off of any passenger(s) or **goods**, and the pick-up location was in the state of Florida;
   b. the operation of any **insured auto** while the driver is logged on to the **ride-share application** and is available to perform **covered TNC operations,** but has not recorded acceptance of such a request in the **ride-share application** and is on a public airport premises within the state of Florida; or
   c. the operation of any **insured auto** while on a public premises immediately after dropping off any passenger(s) or **goods** as the result of completing a request for **covered TNC operations** using the **ride-share application:**
      (i) where the accepted pick-up location of the passenger(s) or **goods** dropped off at the public airport as recorded in the **ride-share application** was within the state of Florida; and

(ii) the **TNC driver** or other operator of the **insured auto** has not recorded acceptance in the **ride-share application** of another request to provide **covered TNC operations.**

**"Prearranged service"** does not include a shared expense carpool or vanpool or transportation provided by a taxicab.

***

15. In addition, the Period II TNC Policy changed the Part I – Liability to Others; Insuring Agreement to provide coverage up to $1,000,000.00 for bodily injury when the following conditions were met:

**PART I—LIABILITY TO OTHERS**
**INSURING AGREEMENT—LIABILITY TO OTHERS**
Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury** and **property damage** for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of an **insured auto** during a **prearranged service**.

**ADDITIONAL DEFINITION USED IN THIS PART ONLY**
When used in Part I—Liability To Others, **insured** means:

1. **You** with respect to an **insured auto**.
2. A **TNC driver** operating an **insured auto.**
3. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person or entity otherwise covered under this Part I—Liability To Others.

***

<u>**THE ACCIDENT, DAMAGES CLAIMED AND UNDERLYING LITIGATON**</u>

16. On or about March 1, 2021, KEPPLE was contracted as a **TNC Driver** with UBER TECHNOLOGIES to provide **Transportation Network Company operations** to users of the Uber app via the **ride-share application** utilizing his 2019 Ford Fiesta at the time of the accident.

17. At 3:40 p.m. on March 1, 2021, KEPPLE utilized his **valid credentials** to log on to Uber's **ride-share application** where he was **available to receive service requests**.

18. At 4:17 p.m., KEPPLE picked up a passenger and began a **prearranged service** for an Uber customer; KEPPLE completed that prearranged service at 4:30 p.m.

19. At 4:30 p.m., KEPPLE went offline and was no longer **available to receive service requests.**

20. KEPPLE logged onto Uber's **ride-share application** again and became **available to receive service requests** at 5:32 p.m. where he remained available until 5:38 p.m. when he again went offline.

21. At or around 5:35 p.m., KEPPLE was involved in an automobile accident with FECTEAU ("the accident") on Derbyshire Road near its intersection with Eighth Street in Daytona Beach, Volusia County, Florida.

22. A Complaint for Damages has been filed in the Circuit Court of the Seventh Judicial Circuit, in and for Volusia County, Florida, Case No. 2021-30893-CICI entitled Suzanne Denise Fecteau v. Tristan Lance KEPPLE[2] and Uber Technologies, Inc., a Foreign Profit Corporation, wherein Fecteau seeks damages for her injuries suffered in the Accident ("the Underlying Litigation"), a copy of which is attached hereto as Exhibit "C" and incorporated by reference herein.

[2] The Underlying litigation improperly spells the driver defendant's name as Keeple rather than Kepple.

23. Progressive is providing a defense to UBER and KEPPLE in the Underlying Litigation pursuant to a Reservation of Rights.

## GROUNDS FOR DECLARATORY JUDGMENT

24. PROGRESSIVE is seeking clarification from this Court as to which of the two insurance policies issued to UBER apply to The Accident and provide coverage to KEPPLE and UBER for the claims asserted against them by FECTEAU in the Underlying Litigation.

25. PROGRESSIVE contends that the Period I TNC Commercial Auto Policy provides Bodily Injury liability coverage as the claims asserted against KEPPLE and UBER arise out of the ownership, maintenance or use of an **insured auto** while an **insured auto** was **available to receive service requests**.

26. PROGRESSIVE further contends that the Period II TNC Commercial Auto Policy does not provide Bodily Injury liability coverage for the accident as the claims asserted against KEPPLE and UBER do not arise out of the ownership, maintenance or use of an **insured auto** during a **prearranged service**.

27. More specifically, PROGRESSIVE contends that the Period II TNC Policy does not provide Bodily Injury liability coverage to KEPPLE as, at the time of the accident, KEPPLE did not meet the definition of an **insured** under said policy because he was not providing **covered TNC operations** via the **ride-share application,** had not accepted a **prearranged service,** was not driving on a public

airport at the time of the accident, and was merely **available to receive service requests** at the time of the loss.

28. PROGRESSIVE, therefore, contends that the available bodily injury coverage limits available to KEPPLE and UBER to indemnify them for the claims against FECTEAU are $50,000.00 under the Period I TNC Policy.

29. Moreover, PROGRESSIVE contends there is no coverage under the Period II TNC Policy and, as such, the $1,000,000.00 bodily injury limits under said policy do not apply to the Accident or the claims asserted by FECTEAU against KEPPLE and UBER in Underlying Litigation.

30. There exists a present, ascertained, or ascertainable set of facts or present controversy as to a state of facts concerning the rights and obligations of PROGRESSIVE under the competing Period I TNC Policy and Period II TNC Policies.

31. The rights and obligations of PROGRESSIVE under Period I TNC Policy and Period II TNC Policies are dependent upon the facts and the law applicable to the facts affecting coverage under the two policies.

32. PROGRESSIVE and the Defendants have an actual, present, adverse, and antagonistic interest in the subject matter described herein.

33. All proper and present and antagonistic interests are before the court by proper process.

34. PROGRESSIVE is in doubt with respect to its rights under the Period I TNC Policy and Period II TNC Policies and by this complaint seeks a declaration of

its rights and obligations under the said policies with respect to the claims asserted against PROGRESSIVE.

35. Pursuant to the provisions of Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201 and 2202, this court is invested with the power to declare the rights and liabilities of the parties hereto and to give such relief as it deems necessary under the facts and circumstances.

WHEREFORE, PROGRESSIVE respectfully requests this Court to enter a declaratory judgment concerning the Period I TNC Policy and Period II TNC Policies, and to declare the existence or non-existence of any immunity, power, privilege or right, or any other fact upon which the existence or nonexistence of such immunity, power, privilege or right may depend, including the following:

a. That at the time of the accident, the 2019 Ford Fiesta constituted a **covered auto** under the Period I TNC Policy;
b. That, at the time of the accident, KEPPLE constituted an **insured** under the Period I TNC Policy;
c. That at the time of the accident, the Period I TNC Policy provided coverage for the Accident and PROGRESSIVE has a duty to defend and indemnify KEPPLE and UBER up to $50,000.00 for any judgment against them in the Underlying litigation;
d. That at the time of the accident, 2019 Ford Fiesta did not constitute an **insured auto** under Period II TNC Policy;

e. That at the time of the accident, KEPPLE did not constitute an **insured** under the Period II TNC Policy;

f. That the Period II TNC Policy does not provide bodily injury coverage KEPPLE, or UBER for any damages sought by FECTEAU as a result of the Accident;

g. That PROGRESSIVE has no duty to indemnify KEPPLE or UBER for any damages awarded to FECTEAU in the Underlying Litigation under the Period II TNC Policy; and

h. Such other relief as the Court may deem just and proper.

DATED: January 25, 2024.

/s/ *Jessalea M. Shettle*
Jessalea M. Shettle, Esquire
Florida Bar No. 127614
FREEMAN, GOLDIS & CASH, P.A.
9600 Koger Blvd N, Ste 103
St Petersburg, FL 33702
Post Office Box 12349
St. Petersburg, FL 33733-2349
Tel: 727-327-2258
Fax: 727-362-1987
jessalea.shettle@fgclawfirm.com
crystal.siegel@fgclawfirm.com

*Attorneys for Plaintiff, Progressive Express Insurance Company*